UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br>JOHN EDWARD SAFFER,<br>Debtor | Case No:          20-14015 - JGR |
| | Chapter          7 |
| COLORADO HOUSING AND FINANCE AUTHORITY<br>and its SUCCESSORS, ASSIGNS, SERVICERS,<br>TRUSTEES AND INVESTORS,<br>Creditor<br>vs.<br>JOHN EDWARD SAFFER and JEANNE Y JAGOW,<br>Trustee<br>Respondents | |

## Motion For Relief From Stay

        Comes now, COLORADO HOUSING AND FINANCE AUTHORITY, hereinafter "Movant", by and through its attorneys, JANEWAY LAW FIRM, P.C., and requests that this Court enter an Order For Relief From Stay pursuant to 11 U.S.C. Section 362(d).  As grounds for this Motion, Movant states:

1.     Debtor filed this Bankruptcy petition on June 11, 2020.

2.     Movant seeks to terminate the automatic stay as to Movant.

3.     Debtor, JOHN SAFFER, signed a Note for the benefit of Movant or Movant's predecessors in interest on the Note.  Said Note was in the original amount of $270,019.00. Movant is in possession of or otherwise entitled to enforce said Note.

4.     Movant is a secured creditor by virtue of the Deed of Trust signed by Debtor JOHN SAFFER, recorded in the County where the property is located on March 26, 2019 at reception number D9025545.

5.     All rights and remedies under the Deed of Trust have been assigned to Movant pursuant to that certain Assignment of Deed of Trust.

6.     Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contacts, judgments, mortgages, loan modifications and security agreements in support of right to seek a lift of the automatic stay and foreclosure if necessary.  The copies were provided to counsel by Movant, or obtained from public records.

7.     The property (hereinafter "Property") described in the Deed of Trust and the subject of this Motion appears to be the Debtor's principal residence:

        SEE ATTACHED LEGAL DESCRIPTION
        Purported Common Address: 15195 EAST JEFFERSON PLACE, AURORA, CO 80014

8.     The current value of the property is approximately $283,514.00 pursuant to the debtor's schedules.

9.      As of June 15, 2020, the unpaid principal balance of the Note is $268,742.80.

10.     The current payment amount is $1,809.84 and includes principal, interest, taxes and insurance.

11.     Debtor is in default pursuant to the terms of the Note and Deed of Trust by failure to make payments as due.  As of June 15, 2020 Debtor is currently in default of 10 payments, along with other fees and charges.  A payment history is provided.  The approximate amount necessary to cure the default that gave rise to this motion is estimated to be:

| | |
|---|---|
| 7 Payments at $1,780.15 | $12,461.05 |
| 3 Payments at $1,809.84 | $5,429.52 |
| Late Fees | $235.24 |
| NSF Fees | $21.00 |
| Property Inspections | $57.00 |
| Foreclosure Attorney Fees & Costs | $2,084.35 |
| Bankruptcy Attorney Fees & Costs | $2,756.00 |
| Estimated Total | $23,044.16 |

12.     An additional payment of $1,766.15 will come due on July 1, 2020.

13.     The loan was active in foreclosure prior to the bankruptcy petition being filed.  The Notice of Election and Demand was filed with the Public Trustee on February 11, 2020.  The sale will be rescheduled once relief from stay enters.

14.     To the best knowledge of the undersigned attorney, the Debtor has not recently requested a loan modification.

15.     The approximate payoff to Movant of the entire debt owed as of June 15, 2020 is estimated to be:

| | |
|---|---|
| Unpaid Principal Balance | $268,742.80 |
| Interest | $12,043.62 |
| Late Fees | $235.24 |
| NSF Fees | $21.00 |
| (Suspense) | $-0.00 |
| Property Inspections | $57.00 |
| PMI | $183.97 |
| Escrow Advance | $2,218.96 |
| Foreclosure Attorney Fees & Costs | $2,084.35 |
| Bankruptcy Attorney Fees & Costs | $2,756.00 |
| Estimated Total | $288,342.94 |

16.     Additional liens against the property include:
    a.  Colorado Housing and Finance Authority in the amount of $13,500.00 pursuant to Debtor's Schedules.
    b.  Timbers HOA I, Inc.  in the amount of $1,500.00 pursuant to Debtor's Schedules.

17.     Movant has grounds for relief from stay pursuant to 11 U.S.C. § 362(d)(2).  The property value, for purposes of this motion, should be reduced by the foreclosure costs, subsequent resale costs, and weighed against the increasing debt amount.  *See In re Mountain Side Holdings, Inc., 142 B.R. 421, 423 (Bankr.D.Colo.1992) and In re Steffens, 275 B.R. 570, (Bankr.D.Colo2002) and In*

*re Dickinson, 185 B.R.76 (Bankr.D.Colo.1992).* The Debtor has no measurable equity in the property. The property is not necessary to an effective reorganization. Debtor's case is a Chapter 7 liquidation, not reorganization.

18.     In addition or in the alternative, Movant has cause for relief from stay pursuant to 362(d)(1). Debtor has failed to make payments, and the increasing debt and the costs of obtaining and liquidating the property, leave Movant without adequate protection. Debtor's default constitutes cause for relief from stay pursuant to 362(d)(1).

19.     As further relief sought by Creditor in this Motion, Creditor requests that this Court's Order granting relief from stay be effective immediately, and not stayed pursuant to F.R.B.P. 4001(a)(3).

If the notice filed herein regarding this motion specifies a hearing date more than 30 days from filing the motion, Movant hereby waives its rights to have this matter heard sooner.

WHEREFORE, Movant requests this Court to enter an Order Granting Relief from Stay.

Dated: June 19, 2020
Attorneys for COLORADO HOUSING AND FINANCE AUTHORITY
JANEWAY LAW FIRM, P.C.

_____
Lynn M. Janeway #15592
David R. Doughty #40042
Alison L. Berry #34531
Nicholas H. Santarelli #46592
9800 S. Meridian Blvd., Suite 400
Englewood, CO 80112
Phone: (303) 706-9990
Fax: (303) 706-9994
bankruptcy@janewaylaw.com
JLF #: 20-023933

LOT 108, BLOCK 1, THE TIMBERS FILING NO. ONE, TOGETHER WITH RIGHTS AND EASEMENTS APPURTENANT TO SUBJECT PROPERTY AS CREATED IN THOSE INSTRUMENTS RECORDED NOVEMBER 30, 1972 IN BOOK 2080 AT PAGE 276, DECEMBER 1, 1974 IN BOOK 2296 AT PAGE 169, APRIL 21, 1975 IN BOOK 2327 AT PAGE 174, AUGUST 19, 1975 IN BOOK 2364 AT PAGE 579 AND APRIL 27, 1977 IN BOOK 2579 AT PAGE 230, COUNTY OF ARAPAHOE, STATE OF COLORADO.

In re:
JOHN EDWARD SAFFER,

Case Number:        20-14015 - JGR
Chapter:            7

### AFFIDAVIT PURSUANT TO THE SERVICEMEMBER CIVIL RELIEF ACT OF 2003

I, Amanda Bishop, being of lawful age, first duly sworn, hereby state as follows:

I am over the age of 18 and am an employee of JANEWAY LAW FIRM, P.C.

On June 19, 2020, I, Amanda Bishop, performed a search on the Department of Defense
Manpower Data Center.  Upon searching the Department of Defense Manpower Data Center
(DMDC), the DMDC does not possess any information indicating that the Debtor, JOHN
EDWARD SAFFER, is currently on active duty as to all branches of the Military.

Dated: June 19, 2020

By:    _____
       Amanda Bishop


Title:   Paralegal
Subscribed and affirmed before me in Douglas County, State of Colorado on June 19, 2020

       Seal and Commission expiration date:


_____
(Notary's official signature)

JLF #: 20-023933

STACEY ANN REMBISZ
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20124022125
MY COMMISSION EXPIRES APRIL 11, 2024

Department of Defense Manpower Data Center

Results as of : Jun-19-2020 01:16:41 PM

SCRA 5.4



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN: XXX-XX-2605
Birth Date:
Last Name: SAFFER
First Name: JOHN
Middle Name: EDWARD
Status As Of: Jun-19-2020
Certificate ID: KF09QX4SBB2R2SJ

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard).  This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | Case No: | 20-14015 - JGR |
| JOHN EDWARD SAFFER, | | |
| Debtor | | |
| | Chapter | 7 |
| COLORADO HOUSING AND FINANCE AUTHORITY | | |
| and its SUCCESSORS, ASSIGNS, SERVICERS, | | |
| TRUSTEES AND INVESTORS, | | |
| Creditor | | |
| vs. | | |
| JOHN EDWARD SAFFER and JEANNE Y JAGOW, | | |
| Trustee | | |
| Respondents | | |

**NOTICE OF MOTION FOR RELIEF FROM STAY
AND OPPORTUNITY FOR HEARING PURSUANT TO 11 U.S.C. § 362(d)
OBJECTION DEADLINE:  July 7, 2020**

YOU ARE HEREBY NOTIFIED that a Motion for Relief from Stay has been filed, a copy of which is attached hereto.

A hearing on the Motion has been set for **July 14, 2020 at 1:00 P.M. at the U.S. Custom House, 721 19th Street, in COURTROOM B, Denver, Colorado 80202-2508.**  The hearing will be conducted in accordance with the provisions of Local Bankruptcy Rule 4001-1.

IF YOU DESIRE TO OPPOSE THIS MOTION, you must file with this court a WRITTEN OBJECTION to the motion on or before the objection deadline stated above and serve a copy upon Movant's attorney, whose address is listed below.

If you file an objection, you are REQUIRED to comply with L.B.R. 4001-1 regarding hearing procedures, including (1) the timely submission and exchange of witness lists and exhibits and (2) attendance at the above-scheduled hearing in person or through counsel, if represented.

**IF YOU FAIL TO FILE AN OBJECTION**, the scheduled hearing will be **vacated**, and an order granting the relief requested may be granted without further notice to you.
Dated:  June 19, 2020
Janeway Law Firm, P.C.
Attorneys for COLORADO HOUSING AND FINANCE AUTHORITY

Lynn M. Janeway #15592
David R. Doughty #40042
Alison L. Berry #34531
Nicholas H. Santarelli #46592
9800 S. Meridian Blvd., Suite 400
Englewood, CO 80112
Phone: (303) 706-9990 Fax: (303) 706-9994
bankruptcy@janewaylaw.com
JLF No.: 20-023933

## <u>Certificate of Service</u>

The undersigned hereby certifies that on June 19, 2020 a copy of the attached Notice of Hearing or Preliminary Hearing with a copy of the Motion for Relief from Stay was served:

**VIA US FIRST CLASS MAIL POSTAGE PREPAID TO:**

JOHN EDWARD SAFFER
15195 EAST JEFFERSON PLACE
AURORA, CO 80014

TIMBERS HOA I, INC.
15088 E. HAMPDEN CIRCLE
AURORA, CO 80014

**ELECTRONICALLY VIA CM/ECF TO:**

ANDREW THOMAS BIRNEY - Attorney for Debtor(s)

GEORGE DIMITROV - Attorney for Debtor(s)

JEANNE Y JAGOW - Trustee

US TRUSTEE


*S/Amanda Bishop*
Amanda Bishop, Bankruptcy Coordinator

Loan Number: ███████

MIN: ████████

**Multistate**

# NOTE

FHA Case Number: ████████

March 22, 2019
[Date]

Aurora, COLORADO
[City, State]

**15195 East Jefferson Place**
**Aurora, COLORADO 80014**
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$270,019.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **American Financing Corporation, A Colorado Corporation**. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **5.125%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **May 1, 2019**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on **April 1, 2049**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at

**American Financing Corporation**
**3045 S. Parker Rd. Bld B, Suite 100**
**Aurora, COLORADO   80014**

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. **$1,470.22**.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded

IDS, Inc.

Loan Number: ▮▮▮▮▮▮▮▮                                                    MIN: ▮▮▮▮▮▮▮▮▮

permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **4.000**% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums

---

MULTISTATE FHA Fixed Rate Note                                                                          1/2015-b

IDS, Inc.

Loan Number: ▮▮▮▮▮▮▮▮                                    MIN: ▮▮▮▮▮▮▮▮

secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
John Saffer                      -Borrower                                        -Borrower

                                                                        *[Sign Original Only]*

Loan originator (Organization): **American Financing Corporation**; NMLS #: **182334**
Loan originator (Individual): **Brian Barker**; NMLS #: **1518075**

---

**MULTISTATE FHA Fixed Rate Note**                                                                        **1/2015-b**

IDS, Inc.

# ALLONGE TO PROMISSORY NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE.

| | |
|---|---|
| *Loan Number:* | ███████ |
| *Note Date:* | **March 22, 2019** |
| *Original Loan Amount:* | **$270,019.00** |
| *Borrower(s) Name(s):* | **John Saffer** |
| *Property Address:* | **15195 East Jefferson Place<br>Aurora, CO  80014** |

Pay to the order of        **COLORADO HOUSING AND FINANCE AUTHORITY**

Without Recourse

**American Financing Corporation, A Colorado Corporation**

*Jessica Sutherland* (signature)

Signature of Duly Authorized Officer

**Jessica Sutherland, Funding Manager**

Typed Name and Title of Signatory

PAY TO THE ORDER OF
WITHOUT RECOURSE
COLORADO HOUSING AND FINANCE AUTHORITY

Thomas Haffey
Secondary Marketing Manager

DEED OF TRUST
03/26/2019 12:23 PM
Arapahoe County Clerk, CO          RF: $78.00   DF: $0.00
Page: 1 of 14
Joan Lopez, Clerk & Recorder         **D9025545**
Electronically Recorded



WHEN RECORDED, MAIL TO:
**American Financing Corporation**
**3045 S. Parker Rd. Bld B, Suite 100**
**Aurora, COLORADO 80014**
This instrument was prepared by:
**American Financing Corporation**
**3045 S. Parker Rd. Bld B, Suite 100**
**Aurora, COLORADO 80014**
**303-695-7000**

Loan Number: █████████

_____ (Space Above This Line For Recording Data) _____

# DEED OF TRUST

FHA Case Number:
████████████

MIN: ████████
SIS Telephone #: **(888) 679-MERS**
████████

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A) "Security Instrument"** means this document, which is dated **March 22, 2019**, together with all Riders to this document.

**(B) "Borrower"** is **John Saffer**. Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is **American Financing Corporation**. Lender is **A Colorado Corporation**, organized and existing under the laws of **Colorado**.
Lender's address is **3045 S. Parker Rd. Bld B, Suite 100, Aurora, COLORADO 80014**.

**(D) "Trustee"** is the Public Trustee of **Arapahoe** County, Colorado.

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of **Delaware**, and has an address and telephone number of **P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS**.

**(F) "Note"** means the promissory note signed by Borrower and dated **March 22, 2019**. The Note states that Borrower owes Lender **TWO HUNDRED SEVENTY THOUSAND NINETEEN AND NO/100** Dollars (U.S. **$270,019.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **April 1, 2049**.

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (check box as applicable):
☐ Adjustable Rate Rider        ☐ Condominium Rider          ☒ Planned Unit Development Rider
☒ Other(s) (specify): **Tax Exempt Financing Rider to Security Instrument,**

_____

FHA Colorado Deed of Trust with MERS 1/2015

Page 1 of 11

IDS, Inc. - 59435

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers

**(M) "Escrow Items"** means those items that are described in Section 3

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U S C  Section 2601 *et seq.*) and its implementing regulation, Regulation X (12 C F R  Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

**(R) "Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee

**(S) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS  This Security Instrument secures to Lender  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note  For this purpose, Borrower, in consideration of the debt and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of **Arapahoe**

**SEE ATTACHED LEGAL DESCRIPTION**

Parcel ID Number ▮▮▮▮▮▮▮

which currently has the address of **15195 East Jefferson Place**
                                  **Aurora, COLORADO 80014,**                                      ("Property Address")

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property  All replacements and additions shall also be covered by this Security Instrument  All of the foregoing is referred to in this Security Instrument as the "Property " Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument

---



BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record and liens for taxes for the current year not yet due and payable

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

UNIFORM COVENANTS  Borrower and Lender covenant and agree as follows

**1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note  Borrower shall also pay funds for Escrow Items pursuant to Section 3  Payments due under the Note and this Security Instrument shall be made in U S currency  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender  (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14  Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current  Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds  Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure  No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority.

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums,

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required,

Third, to interest due under the Note,

Fourth, to amortization of the principal of the Note, and,

Fifth, to late charges due under the Note

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount of the Periodic Payments

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property, (b) leasehold payments or ground rents on the Property, if any, (c) premiums for any and all insurance required by Lender under Section 5, and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums  These items are called "Escrow Items " At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time  Any such waiver may only be in writing  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been

FHA Colorado Deed of Trust with MERS 1/2015

IDS, Inc - 59435

waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement, (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

---

FHA Colorado Deed of Trust with MERS 1/2015

IDS, Inc - 59435



If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense  Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee  Lender shall have the right to hold the policies and renewal certificates  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as additional loss payee

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender  Lender may make proof of loss if not made promptly by Borrower  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds  Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower  Such insurance proceeds shall be applied in the order provided for in Section 2

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters  If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim  The 30-day period will begin when the notice is given  In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property  Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property  Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition  Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal  Any

application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments

Lender or its agent may make reasonable entries upon and inspections of the Property If it has reasonable cause, Lender may inspect the interior of the improvements on the Property Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property Lender's actions can include, but are not limited to (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court, and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value Any balance shall be paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the

---

partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument  The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower  Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower  Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several  However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer") (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument  Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing  The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees  Lender may collect fees and charges authorized by the Secretary  Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then  (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower  Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower  If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes  Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing  Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means  Notice to any one Borrower shall constitute notice to all

FHA Colorado Deed of Trust with MERS 1/2015

IDS, Inc - 59435

Borrowers unless Applicable Law expressly requires otherwise The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender Borrower shall promptly notify Lender of Borrower's change of address If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure There may be only one designated notice address under this Security Instrument at any one time Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision

As used in this Security Instrument (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa, and (c) the word "may" gives sole discretion without any obligation to take any action

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage Those conditions are that Borrower. (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements, (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged However, Lender is not required to reinstate if (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or (d) Electronic Funds Transfer Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred However, this right to reinstate shall not apply in the case of acceleration under Section 17

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law There also might be one or more

---

FHA Colorado Deed of Trust with MERS 1/2015

Page 8 of 11

IDS, Inc - 59435

changes of the Loan Servicer unrelated to a sale of the Note If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law

**21. Hazardous Substances.** As used in this Section 21 (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials, (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law, and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products)

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law Nothing herein shall create any obligation on Lender for an Environmental Cleanup

NON-UNIFORM COVENANTS Borrower and Lender further covenant and agree as follows

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums**

---

FHA Colorado Deed of Trust with MERS 1/2015

IDS, Inc - 59435

secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Lender shall mail a copy of the notice to Borrower as provided in Section 14. Trustee shall record a copy of the notice in the county in which the Property is located. Trustee shall publish a notice of sale for the time and in the manner provided by Applicable Law and shall mail copies of the notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's certificate describing the Property and the time the purchaser will be entitled to Trustee's deed. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request that Trustee release this Security Instrument and shall produce for Trustee, duly cancelled, all notes evidencing debts secured by this Security Instrument. Trustee shall release this Security Instrument without further inquiry or liability. Borrower shall pay any recordation costs and the statutory Trustee's fees.

**24. Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ -Witness                    _____ -Witness

_____ (Seal)                       _____ (Seal)
**John Saffer**                       -Borrower                                              -Borrower

State of **COLORADO**

County of _____

This record was acknowledged before me on ____3/22/19____
by **John Saffer.**

Stamp

> CHRISTINE MOLINA
> NOTARY PUBLIC
> STATE OF COLORADO
> NOTARY ID 20034037228
> MY COMMISSION EXPIRES OCTOBER 31, 2019

_____
Signature of notarial officer

_____
Title of office

My commission expires: _____

Loan originator (Organization): **American Financing Corporation**; NMLS #: **182334**
Loan originator (Individual): **Brian Barker**; NMLS #: **1518075**

Loan Number ███████

MIN. ████████
*FHA Case Number* ███████

# FHA PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **22nd day of March, 2019**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **American Financing Corporation, A Colorado Corporation** ("Lender") of the same date and covering the Property described in the Security Instrument and located at·

**15195 East Jefferson Place**
**Aurora, COLORADO 80014**
[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as

**THE TIMBERS**
(Name of Planned Unit Development).

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A    So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then (i) Lender waives the provision in Paragraph 3 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the

---

**FHA — MULTISTATE PUD Rider**                                                    **1/2015**

IDS, Inc

███████████

Property, and (ii) Borrower's obligation under Paragraph 5 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C.  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)            _____ (Seal)
John Saffer                          -Borrower                                              -Borrower

FHA — MULTISTATE PUD Rider                                                                    1/2015

Page 2 of 2

IDS, Inc.

Exhibit "A"

LOT 108, BLOCK 1, THE TIMBERS FILING NO. ONE, TOGETHER WITH RIGHTS AND EASEMENTS APPURTENANT TO SUBJECT PROPERTY AS CREATED IN THOSE INSTRUMENTS RECORDED NOVEMBER 30, 1972 IN BOOK 2080 AT PAGE 276, DECEMBER 1, 1974 IN BOOK 2296 AT PAGE 169, APRIL 21, 1975 IN BOOK 2327 AT PAGE 174, AUGUST 19, 1975 IN BOOK 2364 AT PAGE 579 AND APRIL 27, 1977 IN BOOK 2579 AT PAGE 230, COUNTY OF ARAPAHOE, STATE OF COLORADO.

MODIFICATION OF DEED OF TRUST
05/20/2019 10:39 AM RF: $28.00 DF: $0.00
Arapahoe County Clerk, CO
Page: 1 of 4
Joan Lopez, Clerk & Recorder
Electronically Recorded

D9046335

**CHFA Form 205**
**Page 1 of 2**
**02/18.v2**

Colorado Housing and Finance Authority
www.chfainfo.com

**All CHFA Programs**
**Modification of Promissory Note and/or Deed of Trust**

This Modification of Promissory Note and/or Deed of Trust ("Modification") is by and between
John Saffer _____

["Borrower(s)"] and "Lender" as defined below.

American Financing Corporation _____
"Lender"

WHEREAS, Borrower(s) made, executed and delivered to Lender a Promissory Note dated
March 22, 2019 _____(the "Note"); and

WHEREAS, the Note is secured by a Deed of Trust (the "Deed of Trust") which was recorded on March 26, 2019 _____, in
Book _____, at Page _____, Reception No. D9025545 _____ ("Deed of Trust"), of the records of the Clerk
and Recorder of the County or City and County of Arapahoe _____: and

WHEREAS, all documents securing the Note or executed in connection with the Note, including but not limited to the Deed of
Trust, are collectively referred to as the "Loan Documents"; and

WHEREAS, it is mutually desirable, beneficial and agreeable to the parties hereto that the terms of the Note and/or Deed of
Trust be modified as hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual benefits inuring to each other, it is understood and agreed, by and
between the parties hereto, that the terms and conditions of the Note and/or Deed of Trust are hereby modified as follows:

Deed of Trust to have a endorsed Tax Exempt Rider attached and recorded.

It is further understood and agreed that all references in the Loan Documents to the Note and Deed of Trust are hereby
modified to reflect the terms of the Note and/or Deed of Trust as modified by this Modification. It is further understood and
agreed that all terms, conditions, and covenants of the Note, Deed of Trust, and other Loan Documents, not otherwise
modified hereby, are hereby ratified and confirmed, and this Modification, when executed by the parties hereto, shall
become a part of the Note and Loan Documents, and shall have the same force and effect as if its terms and conditions were
originally incorporated in the Note, Deed of Trust, and other Loan Documents, prior to the execution thereof.

The undersigned Borrower(s) hereby appoints the Lender, or any person or entity acting upon the directions of the Lender, as
its attorney-in-fact for the sole and limited purpose of inserting information in this Modification regarding the date of the
Note and/or date and recording of the Deed of Trust, whether prior to or following the execution and notarization of this
Modification. This Modification may be executed in one or more counterparts, each of which shall constitute an original and
all of which taken together shall constitute one agreement.

CHFA Form 205
Page 2 of 2
02/18.v2

**BORROWER(S):**

_____
JOHN SAFFER

_____    _____

**Acknowledgement**

STATE OF ___Co___ )

_____ County of __Arapahoe__ ) ss.

The foregoing instrument was acknowledged before me this __10th__ day of __April__ 20__19__ by
JOHN SAFFER _____ (Borrower), _____ (Co-borrower),
_____ (Co-borrower), and _____ (Co-borrower).

Witness my hand and official seal.

_____
Notary Public
My commission expires: __6/13/00__

**LENDER:**

__American Financing Corporation__

"Lender"

By: __Krystal Blankenship__ _____

**Acknowledgement**

STATE OF __Colorado__ )

_____ County of __Arapahoe__ ) ss.

The foregoing instrument was acknowledged before me this __11__ day of __April__ 20__19__ by
__Krystal Blankenship__ as __Agent__ of
__American Financing Corporation__

Witness my hand and official seal.

_____
Notary Public
My commission expires: __6/24/2019__

LISA E. WALSH
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 19964017369
MY COMMISSION EXPIRES JUNE 24, 2019

DEBRA S LINDT
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 19924015189
MY COMMISSION EXPIRES JUNE 13, 2022

After recording, please return documents to:
Colorado Housing and Finance Authority ATTN: Final Documents
1981 Blake Street
Denver, CO 80202

This form must be attached to and recorded with the First Deed of Trust for all First Mortgage Loans in the CHFA tax exempt programs.

CHFA Form 220
Page 1 of 2
06/18.v4

**Colorado Housing and Finance Authority**
www.chfainfo.com
**Tax Exempt Financing Rider**

This Tax Exempt Financing Rider is made as of the day and year set forth next to the signature given by the undersigned ("Borrower") and is incorporated into and shall be deemed to amend and supplement the Deed of Trust ("Security Instrument") of even date herewith which secures the Borrower's Note ("Note") to the Lender identified in the Security Instrument and covering the mortgaged property described and defined in the Security Instrument (the "Property").

Additional Covenants:
In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree: (1) that this loan is not assumable without the approval of the Lender; and (2) to amend the Security Instrument by adding additional grounds for acceleration as follows:

Lender, or such of its successors or assigns as may by separate instrument assume responsibility for assuring compliance by Borrower with the provisions of this Tax Exempt Financing Rider, may require immediate payment in full of all sums secured by this Security Instrument if:

(a) All or part of the Property is sold or otherwise transferred by the Borrower to a purchaser or other transferee:

(i) Who cannot reasonably be expected to occupy the Property as a principal residence within a reasonable time (*e.g.*, 60 days) after the sale or transfer, all as provided in Section 143(c) and (i)(2) of the Internal Revenue Code; or

(ii) Who has had a present ownership interest in a principal residence during any part of the three-year period ending on the date of the sale or transfer, unless the residence is in a targeted area or such purchaser or other transferee is a veteran, if such veteran has not previously qualified for and received such financing, all as provided in Section 143(d) and (i)(2) of the Internal Revenue Code; or

(iii) At an acquisition cost that is greater than 90 percent of the average area purchase price (greater than 110 percent for targeted area residences), all as provided in Section 143(e) and (i)(2) of the Internal Revenue Code; or

(iv) Who has a gross family income in excess of the applicable percentage of applicable median family income, as provided in Section 143(f) and (i)(2) of the Internal Revenue Code; or

(b) Borrower fails to occupy the Property described in the Security Instrument within a reasonable time (*e.g.*, 60 days) after financing is provided, without prior written consent of Lender or its successors or assigns described at the beginning of this Tax Exempt Financing Rider; or

(c) Borrower omits or misrepresents a material fact with respect to the provisions of Section 143 of the Internal Revenue Code in and at the time of an application for the loan secured by this Security Instrument.

Borrower understands and agrees that this Tax Exempt Financing Rider shall be attached to and recorded with the Security Instrument, defined above. If the Security Instrument is recorded without this Tax Exempt Financing Rider attached, then without any further notice or consent, the undersigned Borrower(s) hereby appoints the Lender and/or Colorado Housing and Finance Authority (CHFA), or any person or entity acting upon the directions of either the Lender and/or CHFA, as its attorney-in-fact for the sole and limited purpose of re-recording the Security Instrument in the Property records to attach this Tax Exempt Financing Rider thereto.

References are to the Internal Revenue Code as amended and in effect on the date of the issuance of bonds, the proceeds of which will be used to finance the purchase of the Security Instrument, and are deemed to include the implementing regulations. For all loan types, except FHA loans, in addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows:

CHFA Form 220
Page 2 of 2
06/18.v4

1.      In the case of acceleration pursuant to this Tax Exempt Financing Rider, Borrower shall have no right of reinstatement.

2.      Upon acceleration under the Security Instrument or abandonment of the Property, Lender and/or its successors and assigns (in person, by agent, or by judicially-appointed receiver) shall be entitled to enter upon, take possession of, and manage the Property and to collect the rents of the Property, including those past due. Any rents collected by Lender and/or its successors and assigns or the receiver shall be applied first to the payment of the costs of management of the Property and collection of rents including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Security Instrument.

By signing below, Borrower(s) accept(s) and agree(s) to the terms and provisions in this Tax Exempt Financing Rider.

_____      3/22/19
John Saffer                                 Date

_____      _____
                                              Date

_____      _____
                                              Date

_____      _____
                                              Date

State of Colorado           }
_____ County of Arapahoe  } ss
                         }

The foregoing instrument was acknowledged before me on this __22__ day of March, 20 19

by John Saffer _____ and _____

and _____ and _____ [Borrower(s)].

My Commission Expires: _____

Witness my hand and official seal.

CHRISTINE MOLINA
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20034097228
MY COMMISSION EXPIRES OCTOBER 31, 2019

_____
Notary Public

ASSIGNMENT
01/08/2020 11:46 AM                    RF: $13.00    DF: $0.00
Arapahoe County Clerk, CO
Page: 1 of 1
Joan Lopez, Clerk & Recorder
Electronically Recorded

E0003004

WHEN RECORDED, RETURN TO **CHFA - Loan Servicing A, 1981 Blake Street**, **Denver, Colorado 80202 ATTN: POST-CLOSING**

## ASSIGNMENT OF DEED OF TRUST

For value received, Mortgage Electronic Registration Systems, Inc., as beneficiary**, as nominee for,** **American Financing Corporation**, its successors and assigns, the beneficiary of the deed of trust hereinafter described ("Deed of Trust"),

**hereby assigns and transfers** to Colorado Housing and Finance Authority, its successors and assigns, of all its right, title and interest in and to the Deed of Trust executed by **John Saffer** for the benefit of Mortgage Electronic Registration Systems, Inc., as beneficiary**, as nominee for American Financing Corporation**, its successors and assigns dated **03/22/2019** and recorded on **03/26/2019** in the office of the Clerk and Recorder of **Arapahoe** , State of **Colorado** at Reception# , **D9025545** with respect to the property also known by street and number as:
**15195 East Jefferson Place Aurora, CO 80014**

Date:  01/08/2020
Mortgage Electronic Registration Systems, Inc., as beneficiary


By: _____
**Dolores Higgins, Assistant Secretary**

State of **Colorado**,}
County of **Denver**}SS:

The foregoing Assignment of Deed of Trust was acknowledged before me, on  01/08/2020  by **Dolores Higgins** , Assistant Secretary of Mortgage Electronic Registration Systems, Inc., as beneficiary on behalf of said corporation.

My commission expires: **12/09/2020**

Notary Public **Alejandro Casillas**

> **ALEJANDRO CASILLAS**
> NOTARY PUBLIC
> STATE OF COLORADO
> NOTARY ID 20044034855
> MY COMMISSION EXPIRES DECEMBER 9, 2020

DAN # ▮▮▮▮▮▮▮▮▮▮

Lenders Loan Number: ▮▮▮▮▮▮
MIN: ▮▮▮▮▮▮▮▮▮▮, MERS Phone#: 888-679-6377
P.O. Box 2026, Flint, MI 48501-2026

```
7309 LN[REDACTED]              MORTGAGE LOAN HISTORY                    06-15-20
NAME J  CARTER                 INV-[REDACTED]          DUE 09-01-19 TYPE 11
BR DT MAN N D TYPE 1 INT .0512500 FIRST PB    268,742.80  2ND PB            .00
HUD    .00  NET    1780.15  SF .00625000 SUSP       .00 STOP D B P F N A D L
REP    .00  RES    .00                               8 0 0 0 8 5 0 1
APP             06-02         06-02        06-01         05-28         05-28
SEG#/DUE        09-19         04-21        00-00         09-19         05-20
TYPE/TRAN     1   61        3   10       6   30       1   61        3   12
AMOUNT        183.97       183.97-          00        671.74        671.74-
PRIN-PD          00           00           00           00           00
PRIN-BAL  268,742.80   268,742.80   268,742.80   268,742.80   268,742.80
INT-PD           00           00           00           00           00
ESC-PD       183.97       183.97-          00        671.74        671.74-
ESC-BAL          00       183.97-          00          .00        671.74-
A&H-INS         .00          .00          00          .00          .00
LIFE-INS        .00          .00         .00          .00          .00
LC/FEES         .00          .00         .00          .00          .00
MISC-PD         .00          .00         .00          .00          .00
ADV-BAL    2,218.96     2,034.99     2,034.99     2,034.99     1,363.25
SUSP            .00          .00          .00          .00           00
SC/PAYEE             F.H.A.         ATTY 1289              05006

PAGE 00001 OF 00011  TRANS AVAILABLE       54  OLDEST TRAN 06-04-19 /P
```

```
F309 LM[REDACTED]              MORTGAGE LOAN HISTORY                    06-15-20
NAME J CARTER                  INV-[REDACTED]        DUE 09-01-19 TYPE 11
BR DT MAN N D TYPE 1 INT .0512500 FIRST PB    268,742.80  2ND PB      .00
HUD   .00  NET   1780.15 SF .00625000 SUSP      .00 STOP D B P F N A D L
REP   .00  RES   .00                                8 0 0 0 8 5 0 1
```

| | | | | | |
|---|---|---|---|---|---|
| APP | 05-04 | 05-04 | 05-01 | 04-24 | 04-24 |
| SEG#/DUE | 09-19 | 04-21 | 00-00 | 00-00 | 00-00 |
| TYPE/TRAN | 1  61 | 3  10 | 6  30 | 6  30 | 6  30 |
| AMOUNT | 183.97 | 183.97- | 00 | 00 | 00 |
| PRIN-PD | 00 | 00 | 00 | 00 | 00 |
| PRIN-BAL | 268,742.80 | 268,742.80 | 268,742.80 | 268,742.80 | 268,742.80 |
| INT-PD | 00 | 00 | 00 | 00 | 00 |
| ESC-PD | 183.97 | 183.97- | 00 | 00 | 00 |
| ESC-BAL | 00 | 183.97- | 00 | 00 | 00 |
| A&H-INS | 00 | 00 | 00 | 00 | 00 |
| LIFE-INS | .00 | .00 | .00 | .00 | .00 |
| LC/FEES | .00 | .00 | .00 | .00 | .00 |
| MISC-PD | .00 | .00 | .00 | .00 | .00 |
| ADV-BAL | 1,363.25 | 1,179.28 | 1,179.28 | 1,179.28 | 1,179.28 |
| SUSP | .00 | .00 | .00 | .00 | .00 |
| SC/PAYEE | | F.H.A. | ATTY 1289 | ATTY 1289 | ATTY 1289 |

PAGE 00002 OF 00011  TRANS AVAILABLE    64  OLDEST TRAN 06-04-19 /P

```
7909 LN [redacted]              MORTGAGE LOAN HISTORY                    06-15-20
NAME J CARTER                   INV-[redacted]          DUE 09-01-19 TYPE 11
BR DT MAN N P TYPE 1 INT .0512500 FIRST PB      269,742.80  2ND PB        .00
HUD    .00  NET    1780.15  SF .00625000 SUSP      .00 STOP D B P F N A D L
REP    .00  RES    .00                                      8 0 0 0 8 5 0 1
```

| | | | | | |
|---|---|---|---|---|---|
| APP | 04-24 | 04-02 | 04-02 | 03-24 | 03-17 |
| SEG#/DUE | 00-00 | 09-19 | 04-20 | 00-00 | 00-00 |
| TYPE/TRAN | 6  30 | 1  61 | 3  10 | 6  30 | 6  32 |
| AMOUNT | 00 | 186.74 | 186.74- | 00 | 00 |
| PRIN-PD | 00 | 00 | 00 | 00 | 00 |
| PRIN-BAL | 269,742.80 | 269,742.80 | 269,742.80 | 269,742.80 | 269,742.80 |
| INT-PD | 00 | 00 | 00 | 00 | 00 |
| ESC-PD | 00 | 186.74 | 186.74- | .00 | .00 |
| ESC-BAL | 00 | .00 | 186.74- | .00 | .00 |
| A&H-INS | 00 | .00 | .00 | .00 | .00 |
| LIFE-INS | .00 | .00 | .00 | .00 | .00 |
| LC/FEES | .00 | .00 | .00 | .00 | .00 |
| MISC-PD | .00 | .00 | .00 | .00 | .00 |
| ADV-BAL | 1,179.28 | 1,179.28 | 992.54 | 992.54 | 992.54 |
| SUSP | .00 | .00 | .00 | .00 | 00 |
| SC/PAYEE | ATTY 1289 | | F.H.A. | ATTY 1289 | ATTY 1289 |

PAGE 00003 OF 00011  TRANS AVAILABLE     64  OLDEST TRAN 06-04-19 /P

```
F909 LM [redacted]              MORTGAGE LOAN HISTORY                      06-15-20
NAME J SMITH [redacted]          INV-[redacted]            DUE 09-01-19 TYPE 11
BR DT MAN N P TYPE 1 INT .0512500 FIRST PB      269,742.90  2ND PB          .00
HUD    .00  NET   1790.15  SF .00625000 SUSP        .00 STOP D B P F N A D L
REP    .00  RES       .00                               8 0 0 0 8 5 0 1
```

| | | | | | |
|---|---|---|---|---|---|
| APP | 03-17 | 03-17 | 03-17 | 03-17 | 03-17 |
| SEG#/DUE | 00-00 | 00-00 | 00-00 | 00-00 | 00-00 |
| TYPE/TRAN | 6  32 | 6  32 | 6  32 | 6  32 | 6  32 |
| AMOUNT | 00 | 00 | 00 | 00 | 00 |
| PRIN-PD | 00 | 00 | 00 | 00 | 00 |
| PRIN-BAL | 269,742.90 | 269,742.90 | 269,742.90 | 269,742.90 | 269,742.90 |
| INT-PD | 00 | 00 | 00 | 00 | 00 |
| ESC-PD | .00 | .00 | .00 | .00 | .00 |
| ESC-BAL | .00 | .00 | .00 | .00 | .00 |
| A&H-INS | .00 | .00 | .00 | .00 | .00 |
| LIFE-INS | .00 | .00 | .00 | .00 | .00 |
| LC/FEES | .00 | .00 | .00 | .00 | .00 |
| MISC-PD | .00 | .00 | .00 | .00 | .00 |
| ADV-BAL | 992.54 | 992.54 | 992.54 | 992.54 | 992.54 |
| SUSP | .00 | .00 | .00 | .00 | .00 |
| SC/PAYEE | ATTY 1289 | ATTY 1289 | ATTY 1289 | ATTY 1289 | ATTY 1289 |

```
PAGE 00004 OF 00011  TRANS AVAILABLE      64  OLDEST TRAN 06-04-19 /P
```

```
F909 LM▮▮▮▮▮▮           MORTGAGE LOAN HISTORY                    06-15-20
NAME J  SMITH▮             INV-▮▮▮▮▮▮▮▮       DUE 09-01-19 TYPE 11
BR DT MAN N D TYPE 1 INT .0512500 FIRST PB    268,742.80  2ND PB         .00
HUD    .00  NET     1780.15  SF .00625000 SUSP    .00 STOP D B P F N A D L
REP    .00  RES     .00                             8 0 0 0 8 5 0 1
```

| | | | | | |
|---|---|---|---|---|---|
| APP | 09-17 | 09-17 | 03-17 | 03-17 | 03-17 |
| SEG#/DUE | 00-00 | 00-00 | 00-00 | 00-00 | 00-00 |
| TYPE/TRAN | 6   32 | 6   32 | 6   32 | 6   32 | 6   32 |
| AMOUNT | 00 | 00 | 00 | 00 | 00 |
| PRIN-PD | 00 | 00 | 00 | 00 | 00 |
| PRIN-BAL | 268,742.80 | 268,742.80 | 268,742.80 | 268,742.80 | 268,742.80 |
| INT-PD | 00 | 00 | 00 | 00 | 00 |
| ESC-PD | .00 | .00 | .00 | .00 | .00 |
| ESC-BAL | .00 | .00 | .00 | .00 | .00 |
| A&H-INS | .00 | .00 | .00 | .00 | .00 |
| LIFE-INS | .00 | .00 | .00 | .00 | .00 |
| LC/FEES | .00 | .00 | .00 | .00 | .00 |
| MISC-PD | .00 | .00 | .00 | .00 | .00 |
| ADV-BAL | 992.54 | 992.54 | 992.54 | 992.54 | 992.54 |
| SUSP | .00 | .00 | .00 | .00 | .00 |
| SC/PAYEE | ATTY 1289 | ATTY 1289 | ATTY 1289 | ATTY 1289 | ATTY 1289 |

```
PAGE 00005 OF 00011  TRANS AVAILABLE     64  OLDEST TRAN 06-04-19 /P
```

```
F905 LN[         ]              MORTGAGE LOAN HISTORY                    06-15-20
NAME J  CARTER               INV-[        ]            DUE 09-01-19 TYPE 11
BR DT MAN N P TYPE 1 INT .0512500 FIRST PB      268,742.80  2ND PB            .00
HUD    .00  NET     1780.15  SF .00625000 SUSP          .00 STOP D B P F N A D L
REP    .00  RES      .00                                    8 0 0 0 8 5 0 1
```

| | | | | | |
|---|---|---|---|---|---|
| APP | | 03-17 | 03-17 | 03-17 | 03-03 | 03-03 |
| SEG#/DUE | | 00-00 | 00-00 | 00-00 | 09-19 | 04-20 |
| TYPE/TRAN | | 6  30 | 6  30 | 6  30 | 1  61 | 3  10 |
| AMOUNT | | 00 | 00 | 00 | 186.74 | 186.74- |
| PRIN-PD | | 00 | 00 | 00 | 00 | 00 |
| PRIN-BAL | | 268,742.80 | 268,742.80 | 268,742.80 | 268,742.80 | 268,742.80 |
| INT-PD | | 00 | 00 | 00 | 00 | 00 |
| ESC-PD | | .00 | .00 | 00 | 186.74 | 186.74- |
| ESC-BAL | | .00 | .00 | 00 | .00 | 186.74- |
| A&H-INS | | .00 | .00 | 00 | 00 | .00 |
| LIFE-INS | | .00 | .00 | .00 | .00 | .00 |
| LC/FEES | | .00 | .00 | .00 | .00 | .00 |
| MISC-PD | | .00 | .00 | .00 | .00 | .00 |
| ADV-BAL | | 992.54 | 992.54 | 992.54 | 992.54 | 805.80 |
| SUSP | | .00 | .00 | .00 | .00 | 00 |
| SC/PAYEE | | ATTY 1289 | ATTY 1289 | ATTY 1289 | | F.H.A |

```
PAGE 00006 OF 00011  TRANS AVAILABLE      64  OLDEST TRAN 06-04-19 /P
```

```
F909 LM█████████            MORTGAGE LOAN HISTORY                    06-15-20
NAME J  SMITH█             INV-██████████████  DUE 09-01-19 TYPE 11
BR 07 MAN N P TYPE 1 INT .0512500 FIRST PB     268,742.80  2ND PB        .00
HUD    .00  WRT     1790.15  SF .00625000 SUSP       .00 STOP D B P F N A D L
REP    .00  RES      .00                                8 0 0 0 8 5 0 1
APP            02-06           02-06         02-04          02-04          01-03
SEG#/DUE       09-19           02-20         09-19          04-20          04-20
TYPE/TRAN      1  61           3  12         1  61          3  10          3  10
AMOUNT        671.74          671.74-       134.06         186.74-        186.74-
PRIN-PD           00              00            00             00             00
PRIN-BAL   268,742.80      268,742.80    268,742.80     268,742.80     268,742.80
INT-PD            00              00            00             00             00
ESC-PD        671.74          671.74-       134.06         186.74-        186.74-
ESC-BAL           00          671.74-            00         134.06-         52.68
A&H-INS          .00             .00           .00            .00            .00
LIFE-INS         .00             .00           .00            .00            .00
LC/FEES          .00             .00           .00            .00            .00
MISC-PD          .00             .00           .00            .00            .00
ADV-BAL       805.80          134.06        134.06            .00            .00
SUSP             .00             .00           .00            .00            .00
SC/PAYEE               05006              F.H.A.          F.H.A.

PAGE 00007 OF 00011  TRANS AVAILABLE       54  OLDEST TRAN 06-04-19 /P
```

```
F909 LN[          ]              MORTGAGE LOAN HISTORY                        06-15-20
NAME J  CARTER                   INV-[              ]     DUE 09-01-19 TYPE 11
BR DT MAN N P CODE 1 INT .0512500 FIRST PB      268,742.80  2ND PB            .00
HUD    .00  NET      1780.15  SF .00625000 SUSP      .00 STOP D B P F N A D L
REP    .00  RES       .00                                 8 0 0 0 8 5 0 1
APP              12-16          12-03          11-18          11-04          10-16
SEG#/DUE         09-19          04-20          09-19          04-20          09-19
TYPE/TRAN      1  52          3  10          1  52          3  10          1  52
AMOUNT           00         186.74-           00         186.74-           00
PRIN-PD          00            00            00            00            00
PRIN-BAL   268,742.80     268,742.80     268,742.80     268,742.80     268,742.80
INT-PD           00            00            00            00            00
ESC-PD           00         186.74-           00         186.74-           00
ESC-BAL      239.42        239.42        426.16        426.16        612.90
A&H-INS          00            00            00            00            00
LIFE-INS        .00           .00           .00           .00           .00
LC/FEES    1    58.81-         .00    1    58.81-        .00    1    58.81-
MISC-PD         .00           .00           .00           .00           .00
ADV-BAL         .00           .00           .00           .00           .00
SUSP            .00           .00           .00           .00           .00
SC/PAYEE              F.H.A.               F.H.A.

PAGE 00008 OF 00011  TRANS AVAILABLE      64  OLDEST TRAN 06-04-19 /P
```

```
F909 LH [REDACTED]              MORTGAGE LOAN HISTORY                    06-15-20
NAME J SMITH                    INV-[REDACTED]          DUE 09-01-19 TYPE 11
BR 07 MAN N P TYPE 1 INT .0512500 FIRST PB      268,742.80   2ND PB        .00
HUD   .00  WRT    1790.15  SF .00625000 SUSP         .00 STOP D B P F N A D L
REP   .00  RES       .00                                      8 0 0 0 8 5 0 1
```

| | | | | | |
|---|---|---|---|---|---|
| APP | 10-07 | 10-07 | 10-02 | 09-27 | 09-27 |
| SEG#/DUE | 09-19 | 10-19 | 04-20 | 10-19 | 09-19 |
| TYPE/TRAN | 1  48 | 1  48 | 3  10 | 1  73 | 1  73 |
| AMOUNT | 00 | 00 | 186.74- | 10.50 | 1,838.96 |
| PRIN-PD | 322.46- | 00 | 00 | 00 | 322.46 |
| PRIN-BAL | 268,742.80 | 268,420.34 | 268,420.34 | 268,420.34 | 268,420.34 |
| INT-PD | 1,147.76- | 00 | 00 | 00 | 1,147.76 |
| ESC-PD | 309.93- | 00 | 186.74- | 00 | 309.93 |
| ESC-BAL | 612.90 | 922.83 | 922.83 | 1,109.57 | 1,109.57 |
| A&H-INS | 00 | 00 | 00 | 00 | 00 |
| LIFE-INS | .00 | .00 | .00 | .00 | .00 |
| LC/FEES | 1   59.81- | 2   10.50- | .00 | 2   10.50 | 1   59.81 |
| MISC-PD | .00 | .00 | .00 | .00 | .00 |
| ADV-BAL | .00 | .00 | .00 | .00 | .00 |
| SUSP | .00 | .00 | .00 | .00 | .00 |
| SC/PAYEE | | | F.H.A. | ◆ | |

```
FPDS LN[REDACTED]              MORTGAGE LOAN HISTORY                        06-15-20
NAME J  CARTER                 INV-[REDACTED]            DUE 09-01-19 TYPE 11
BR DT MAN N P TYPE 1 INT .0512500 FIRST PB     268,742.80  2ND PB            .00
HUD    .00  NET    1780.15  SF .00625000 SUSP        .00 STOP D B P F N A D L
REP    .00  RES    .00                                    8 0 0 0 8 5 0 1
APP            09-18            09-18          09-09          09-04          08-02
SEG#/DUE       09-19            09-19          09-19          04-20          04-20
TYPE/TRAN      1  52            1  48          1  73          3  10          3  10
AMOUNT            00               00       1,780.15         186.74-        186.74-
PRIN-PD          00           322.46-         322.46             00             00
PRIN-BAL  268,742.80       268,742.80     268,420.34     268,742.80     268,742.80
INT-PD           00         1,147.76-      1,147.76             00             00
ESC-PD           00           309.93-        309.93         186.74-        186.74-
ESC-BAL      799.64           799.64       1,109.57         799.64         986.38
A&H-INS          00              .00             00            .00            .00
LIFE-INS        .00             .00            .00            .00            .00
LC/FEES   1    58.81-           .00            .00            .00            .00
MISC-PD         .00             .00            .00            .00            .00
ADV-BAL         .00             .00            .00            .00            .00
SUSP            .00             .00            .00            .00            .00
SC/PAYEE                                •              F.H.A          F.H.A

PAGE 00010 OF 00011  TRANS AVAILABLE      64  OLDEST TRAN 06-04-19 /P
```

```
F909 LM█████            MORTGAGE LOAN HISTORY              06-15-20
NAME J  SKYTER             INV-██            DUE 09-01-19 TYPE 11
BR 07 MAN H P TYPE 1 INT .0512500 FIRST PB    269,742.80  2ND PB       .00
HUD    .00  WEI     1780.15  SF .00625000 SUSP     .00 STOP D B P F N A D L
REP    .00  RES      .00                              8 0 0 0 8 5 0 1
APP            07-30           07-08         06-18        06-04         05-02
SEG#/DUE       08-19           07-19         06-19        04-20         04-20
TYPE/TRAN      1  73           1  73         1  73        3  10         3  10
AMOUNT      1,780.15        1,780.15      1,780.15       186.74-       186.74-
PRIN-PD       321.09          319.73        318.37          00            00
PRIN-BAL  269,742.80      269,063.89    269,383.62   269,701.99    269,701.99
INT-PD      1,149.13        1,150.49      1,151.86          00            00
ESC-PD        309.93          309.93        309.93       186.74-       186.74-
ESC-BAL     1,173.12          863.19        553.26       243.33        430.07
A&H-INS          00              00            00            00            00
LIFE-INS        .00             .00           .00           .00           .00
LC/FEES         .00             .00           .00           .00           .00
MISC-PD         .00             .00           .00           .00           .00
ADV-BAL         00              00            00            00            00
SUSP            00              00            00            00            00
SC/PAYEE  +            +              +          F.H.A.        F.H.A.

PAGE 00011 OF 00012  TRANS AVAILABLE      57  OLDEST TRAN 04-17-19 /P
```

```
F909 LM████████████        MORTGAGE LOAN HISTORY                    06-15-20
NAME J  SXX7XX                 INV-██████████        DUE 09-01-19 TYPE 11
BR DT XXX N P TYPE 1 INT .0512500 FIRST PB     269,742.80  2ND PB         .00
HUD    .00  WET     1780.15  SF .00625000 SUSP       .00 STOP D B P F N A D L
REP    .00  RES     .00                                     8 0 0 0 8 5 0 1
APP            04-17            04-17
SEG#/DUE       06-19           06-19
TYPE/TRAN      1  70           1  42
AMOUNT       616.81             00
PRIN-PD         00        269,701.99-
PRIN-BAL  269,701.99      269,701.99
INT-PD          00             00
ESC-PD       616.81            .00
ESC-BAL      616.81             00
A&H-INS         00             00
LIFE-INS       .00           .00
LC/FEES        .00           .00
MISC-PD        .00           .00
ADV-BAL        .00           .00
SUSP           .00           .00
SC/PAYEE
```

PAGE 00012 OF 00012  TRANS AVAILABLE      57  OLDEST TRAN 04-17-19 /P